Materials, David Stark, etc. Lots of different people. And we have for the Appellant-Cross Appellee, William Harney, and for the Appellee-Cross Appellant, Clayton Muchon. Is that pronounced correctly, sir? Okay. Mr. Harney, you may proceed. May it please the Court. Counsel. Counsel. My name is William Harney. I represent Stark in this case. My co-counsel, Robert Lentz, I'd also like to introduce him. He is on the brief, and he was involved in the trial court. Your Honors, this is a breach of contract case. It's always been a breach of contract case. The case involves three contracts, two lease agreements, and a settlement agreement. Each and every pleading, motion for summary judgment, everything that Mr. Muchon has talked about in his brief, and there was an issue in these motions for summary judgments, dealt with these three contracts. Stark was a lessee of this property for seven years, starting in 1996 until 2003. Now, the facts relating to that are pretty much undisputed. And the stipulation for facts that we entered into lays out most of the pertinent facts relating to that. And that stipulation contains a lot of important facts, including there are settlement agreements. We have a preexisting lease that was entered into that did terminate on December 31st of 2003, but our rights didn't terminate. We never stipulated that our rights terminated. Mr. Muchon's client has a lease that was Stark and the property. The facts are undisputed that all of these stockpiles that are at issue were excavated by Mr. Stark, and Stark excavated them. This is the sand and gravel on top? The sand and gravel. The excavator just piled up? Well, he excavated it from under the ground, processed it, crushed it, sorted it, washed it. That's the purpose of these contracts. They're leases for both contracts. So then, after he did that, they're just piled up on the ground? They're piled up on the ground. And there's no dispute about that. Now, there is a dispute about where they were located and the quantities and so on and so forth. But there's no dispute in the stipulation that Mr. Stark is the one who excavated all these materials. And I think that's what's lost in all of these arguments that concentrate on little portions of these contracts, and that is the purpose of these contracts. And before I get to that, I have to point out that the award in this case of nearly a million dollars is an unjust enrichment award. It doesn't exist. Unjust enrichment does not exist when you have contracts, specific contracts, that govern the dispute. They don't even respond to those cases that we cite. Now, what they've done is they've ignored privity of contract and attempted to use Mr. Stark's lease to somehow bolster their own claim under paragraph 10 of their lease. It also doesn't exist unless there's an inadequate remedy at law. Now, Mr. Lenz cited all those cases and said, look, this is not an unjust enrichment claim. Specific contracts deal with this. There's no privity of contract. They don't have the right to rely on our contract. So let's take a look at what their contract says. And this explains why unjust enrichment isn't available. It's a longstanding principle of contract law that it's not available when you have contracts that govern the dispute. Now, their claim throughout all of this is that they had the exclusive right under paragraph 10 of the Sharf lease to the sand and gravel in, above, underlying, whatever. That's their claim. And that's their agreement with the property owners. But paragraph 10, they completely misconstrued that. Paragraph 10 contains protecting Stark's rights. It always has. It was there to protect Stark. And Stark, if anybody has any third-party beneficiary rights or any rights under a contract with a third party, it's Mr. Stark. It's not Mr. Sharf. And what happened in this case, and I think it's very important that we look at this language that they rely upon. The language in paragraph 10 starts out by saying, this is in the Sharf lease, that the property owners warrant that they have good and merchantable property and that the lessee, Sharf, will have undisturbed use, so on and so forth. But then it says, Sharf has been informed that the current leaseholder of the lease premises is Stark Excavation, specifically mentions Stark. Lessee has also been informed that Stark Excavation will be allowed 12 months to remove its equipment and materials belonging to Stark from the premises after January 1, 2004. Except for Stark Excavation, Lesser shall deliver sole and exclusive possession of the lease premises to lessees on January 1, 2004. So what does that say? It says, Stark will be allowed 12 months to remove its equipment and materials belonging to Stark from the premises after January 1, 2004. Okay? A one-year period. Now... Is that what the Stark lease said as well? The Stark lease contained provisions that said you will have one year to remove any materials. And there's a dispute about when the payment was required. In the end, the property owners took the position that, well, we own the property. Wait, one thing. I'm sorry, what? I'm talking about the original lease between Stark and the... All right, well, the original lease between Stark... Was for several years. Right, for seven years. And it contained language in paragraph eight that said, lessee shall have the right, shall not be obligated, during a period of one year from and after the termination of this lease to dismantle and remove its plant, machinery, equipment, and other improvements, and to sell and remove all sand and gravel stockpiled on the subject premises on which royalties have been previously paid. Now, what Mr. Bouchon has done in this case is taken that language upon which royalties have been previously paid and said, well, that means that we have a right under our contract, unless they paid them by the end of the year, we have a right under our contract to exclusive possession. Paid them by the end of what year? The end of the normal leasing period? Shall have a right for one year after, during a period of one year from and after the termination of this lease. There's no question that the lease terminated on December 31 of 2003. So Stark had the right for a one-year period to remove its stockpiles and equipment and whatnot. Now, a dispute did arrive. And Sharf says that you have to have paid for it before you do that? And they do that by relying on language in disagreement and settlement negotiations that went back and forth between Stark and the property owners, where the property owners took the position, hey, wait a minute, we own this now, because you didn't pay it by the end of the year. And that's our interpretation of the lease. So we have all these negotiations that go on for months. And eventually we have a settlement agreement. And in that settlement agreement, they term it as a sale. But the sale is, and it's based on the royalties that were owed for those materials that were both on the Darra property, which is a property we're talking about, and the 11-acre tract. So it would be accurate to say that the property owners accepted the royalties in some amount for materials that had already been excavated and stockpiled? By Stark. By Stark. Correct. And that was their right to do that, in your view, because that was their contract between them and Stark. Well, it was Stark's right to negotiate that with the property owners. Stark's right to negotiate it, but then those royalties were going to have to be paid. They were going to have to be paid. Now, no, Mr. Mouchon says, well, wait a minute, we had a contract with the property owners. And they interpret that contract in a way that I don't think is proper, because they're relying on our contract. But they're saying, look, we negotiated for that. And this is where that temper affidavit comes in, temper affidavit and whatnot. We negotiated with the property owners for this, and therefore we're entitled to it. They admit that they never excavated any of this. They didn't pay any royalties. They never paid a cent for any of it. In fact, I mean, what happened in this case is the exact opposite of what should have occurred. This whole case started because they took materials from one of Stark's stockpiles and used it for their road base. And that prompted this original lawsuit in 2006 when we filed a complaint and said, you owe us for that. And then they counterclaimed, we got our summary judgment, and then later, two years later, they were allowed to amend, despite Judge Brzezinski's order, and they alleged this unjust enrichment theory. Now, what about the equipment, the residuary clause, for lack of a better way to put it, that deals with the stuff that had been excavated? Also, the clause also dealt with your equipment, which was Stark's equipment, which was on the property, yet he never removed it. That's true. Was that removed? It was removed. Is there any claim or issue that ever arose concerning that? No. No, he removed all of his equipment, and that's the very next line in the paragraph that I read to you, which says, any equipment or material not removed during said one-year period, or in the event of failure to pay the plant site rental during the term of lease shall belong to the lesser. So, I mean, the lesser always take the property owners, always took the position that if you didn't remove it within a year, then we would own that property. So the equipment, the machinery was removed. It was removed within a year, and it was restored. There were also restoration provisions in the agreement that required them to restore areas that they had excavated, you know, plant grass or whatever. And apparently this was done agreeably. There's no litigation about that. No litigation about that. The litigation began in 2006 when we sued because we wanted, we alleged conversion because they took materials from our stockpile. And, I mean, that's what I find really interesting about this case. I mean, let's just look at the agreements that we're talking about here. The paragraph that I just read to you, which is the sole basis under their contract for what they're claiming, they're saying we have the exclusive right except for stark excavation. Stark excavation shall be allowed 12 months to remove its equipment and materials belonging to stark from the premises after January 1, 2004. We entered into this settlement agreement. The settlement agreement was entered into in April, late April of 2004. After all these negotiations, which we claim are irrelevant, they didn't have any right to rely on, but we laid it out in our brief anyway. In that agreement, they expressly, we paid for those materials, and the property owners specifically state, you own them. These belong to stark. They are owned by stark now. And so they then remove them before the end of the year. So I understand the term royalties used here. Is the royalty to be paid by stark to the landowner, stark excavating to the landowner, based upon some percentage of the value of what had been excavated? Yeah, it's based on a formula that is contained in the contract. And there was some, clearly some ambiguity about how that was to be paid. The idea was stark excavating was supposed to pay it to the landowners from where this stuff was taken up. Correct. And the question is how much and all that, but that was, those are the royalties that they repursed it. That's right. Now, I'm just kind of curious. To protect stark's interest, this is all you need. You don't need any other third-party contracting. I mean, the sharps, whatever they contracted with the landowners, that's of no concern to you, is it? It's completely irrelevant. I think it is completely irrelevant. You just relied on the provision you just quoted in saying this gave you the right to do it. Well, no. All I'm saying is that that's the basis for their claim. And when you look at that language, it doesn't allow them to in any way dictate how stark is going to negotiate with the property owners over disputes. You never had any contractual relationship with sharps? None whatsoever. None whatsoever. And that's what's so puzzling about this case. The entire case is based on them relying on provisions in our contract to interpret their contract. And we've said from day one, first of all, that's a breach of contract dispute. And if they have some, and they're not in privity with us, they're not a third-party beneficiary to our contract. They couldn't possibly be. And that's the other thing. They will respond to the case law regardless of how these things were ultimately paid for. We had every right. We cited these cases in our opening brief. They don't even respond to it. Every right to negotiate and even renegotiate that agreement to alter the terms. And to some extent, they did. I mean, the property owners were taking the position that, hey, we own these materials. But, you know, they couldn't have been paid for before the end of the year. He says, well, you could have paid it into a trust or something like that. But the fact of the matter is that when you look at the correspondence going back and forth, they were negotiating about several things. And they didn't even know what the amounts were until January 20th when the Farnsworth Group. Judge Lawrence is a pretty sharp guy. How did he miss all of this in your judgment, what was going on here, and come up with the wrong result? Well, in my judgment, what happened was, I mean, we did do some things that probably should have, in retrospect, should have been done a little differently. The backdating of the agreement. Mr. Mushan made a huge deal out of that. To me, that's a non-issue. It doesn't matter when that agreement was dated. It's been explained in the record. I don't think there was any – Well, if the agreement didn't exist, would that make any difference? Well, I mean, at some point – Well, you have to pay for the royalties. If we paid for the royalties and we removed them within a year, I don't think it would have made any difference. Did the backdated agreement address payment of royalties? The backdated – well, what they did is they inserted the date, and what they should have done is, Mr. Lenz would readily acknowledge this, should have said effective December 30th of – or 31st of 2003. They didn't do that, but there was no attempt to hide anything. We cite the letter. I mean, there's a letter from Mr. Mushan where he specifically acknowledges – I mean, it's right in the record on – there's a specific – here, I've got the letter right here. I think it just spelled it. Yeah, I mean, there's a letter dated May 10th of 2004 to Mr. Bach where Mr. Mushan recognizes that Mr. Lenz said this agreement was signed on April 29th. I mean, there was never any intent to hide that, and we admitted it. I mean, there was never any dispute about that, but that doesn't create a cause of action for unjust enrichment. I mean, if anything, that's an issue that should have been taken up by the judge. But to answer – I want to answer your question. Judge, I know you want to ask a question, but may I answer his question first? Because you asked how the judge – how did Judge Ornst come up with this. And I think what happened was when you look at the pleadings on the motions for summary judgment, Mr. Lenz is very succinct. He says, look, contracts govern this. Unjust enrichment doesn't exist. They're not a third-party beneficiary. They have an adequate remedy at law. They suit the property owners for crying out loud. Very short, concise arguments. Mr. Mushan's response is like his reply brief in this case, which I'll get to in a minute. But to me, he's basically thrown everything up against the wall, and I think he convinced the judge that somehow or another this backdating issue was relevant to unjust enrichment, when unjust enrichment never should have been an issue in the case. And that's the only thing that I can think of. I mean, he has all of these non-issues. I mean, this stipulation, I urge you to read the whole thing, because the stipulation is much more than what they're portraying it as. The stipulation lays out the facts in great detail in the fact that we have separate contracts and so forth. And to me, I don't see anything wrong with what Mr. Stark did here. He negotiated an issue with the property owners. He reached a settlement. They removed all the materials. And none of this became an issue until years after we got summary judgment and after we filed a complaint, because they literally took our materials to use for their own base. And I'm not aware of any contract law that would support that kind of analysis. So, now, Judge, you wanted to ask a question. Your view is anything that had already been excavated belonged to one or two people. It either belonged to Stark or it belonged to the property owners. There was a later settlement agreement. Property owners are happy. Stark is happy. The materials have been moved to his property or whatever. And Stark realizes some of it's gone. But he realized it earlier. He realized it earlier. So, the property owners and Stark are all okay, as far as you're concerned. That's our position. Although, I would also add that if they believe they have a claim against the property owners, they pursued them. We lay that out in our brief in very detail. They specifically allege, you shouldn't have sold these materials to Mr. Stark because you agreed in your separate lease with us that we would have exclusive access to it. And so, they have an adequate remedy in law. They sued and they settled. Okay, you'll have a chance to address this again in a rebuttal, Mr. Herdy. Thank you, Your Honor. Mr. Mouchon. Please support counsel. Counsel. I'm Clay Mouchon, and with me today is my esteemed nephew, Matthew Mouchon, who was helpful in the briefing. I appreciate that. Your Honor, let me start out by addressing a couple of fundamental issues here. And it goes to, does it make a difference when you backdate a document? If it makes no difference, then why do we care when a document is dated? If the document is irrelevant to the litigation, then it makes no difference. I'm sorry? If the document is irrelevant, then it makes no difference. And therein comes the testimony of their chief financial officer, Mr. Masso. He was specifically asked, why did you backdate this document? His testimony, unequivocally, was that we had to backdate it in order that it fit within the lease, the Stark lease. We had to backdate it before the expiration of the Stark lease. And why is that important? Because under the Stark lease, they were only entitled to one year to remove the material. If and only if they owned the material at the expiration of the date. Where does it say that? Pardon? Where does it say that? It says in the Stark lease, they will have one year to remove any material on which royalties have previously been paid. So they can't remove them until they pay the royalties. No. Any material belonging to Stark. What part of your lease entitles you to anything above ground? Your Honor, this goes back to the affidavit. No. The question is simple. Because I see it as a very simple problem. Your lease and Stark's lease both entitled you to all the sand and gravel in and underlying the leased premises. Right? I understand that language. We disagree with the interpretation of it, Your Honor. How do you disagree with all the sand and gravel in and underlying the leased premises? Because of the additional language in that also provides that we would have the right to remove any sand and gravel from the property at any time in our sole discretion. And one of the problems with the motion for ---- They specifically exclude the previous operator's equipment or stockpile. Owned by the previous owner. But that's an issue between the owners of the property and Stark. Not an issue between you and Stark. Your Honor, I would respectfully disagree. Because at some point when you start looking at the three lease agreements, and let's not mistake, this is how the court started. They came in, it was Stark who came in and said, we want the court to interpret the shark lease in order to grant us our rights under the Stark lease. We argue there's no privity. Well, we're arguing there's no privity of contract. And they're saying privity of contract is irrelevant. And in fact, Judge Kuczynski made a specific finding. Wait a minute. You're mixing two different issues here. They're claiming removal of some of their property. You're claiming, no, you own all of these stockpiles. So these are two completely different issues. There are two separate issues. But the other issue comes back to they had one year to remove any material that they owned. When you negotiated your lease, did you know whether or not Mr. Stark had paid the royalties on those stockpiled items? Did you know? No, we did not know yes or no. But what we were told, and which is what is in the Tremper affidavit, is that they might own them. And if they did own them, they would have one year to remove them. And we're okay with that. Well, who owned them if Mr. Stark didn't own them? We believe we owned them at a minimum. How? At a minimum that the property owner would have owned them. Right. At a minimum. And the property owner decided to negotiate with the person that excavated them. I don't understand how you interplay with that. Then we come back to who has exclusive possession of the property? You do. That's correct. Except for the property owners. No, we have exclusive possession to the property owners as well. So they have to ask you permission to let Mr. Stark remove materials that they have already decided that he has the right to remove within a 12-month period? This goes back to... It can't be totally exclusive. Actually, I would disagree, Your Honor. It can't. How does he remove them then? He can't, which is why they backdated the document. If you don't know whether he's paid the royalties or not, what would you do to prevent him from removing them? We would do what we did do. We told him to cease and desist. Why? Because we had exclusive possession of the property. They would have to prove they owned the materials. And they would have to prove they owned them as of December 31, 2003. What gave you a property right in those properties? It would be either Stark's or it would be the property owner's. Well, I think we did have a property interest. But let me, if I may, Your Honor, if I may jump to the second part of that. Let's assume the property owner owned the stockpile. Let's just assume that for a moment. Could they sell the stockpiles and give the right to a third party to come in on the property and remove those stockpiles when we had exclusive possession of the property? When your lease specifically excludes previous operators' equipment or stockpiles. No, it excludes it if they are owned by Stark. Section 10. Lessie has been informed that the current leaseholder of the lease premises is Stark Excavation. Tells you what the 12-month period is. Except for Stark Excavation, Lessor shall deliver sole and exclusive possession of the lease premises to Lessie. What would except for Stark Excavation mean if it didn't mean they are specifically excluded from the terms of your lease? Because I would respectfully submit you're taking it out of context. The rest of the agreement says he will have one year to remove the material and equipment owned. But let's just look at the logic of the purposes of these leases. You didn't excavate them. You didn't process them. You didn't do anything with them. All of that work effort is expended by Stark. You're now being given the successive right to do the same thing Stark had been doing, right? Correct. That's all you did. You just took the place of Stark. And we have the same restrictions. We have to pay the royalties. Absolutely. And if we don't pay the royalties, we don't own it. That's an issue between you and the property owner. That's not you and Stark's problem. Unless we enter into a contractual arrangement that gives us exclusive possession of the property, except for Stark's right to remove equipment he owned and material he owned. Now, let's pause there. You have said this several times, and I guess part of this is then the question of does he own it? That's correct. And when did he own it? Well, the lease he had with the property owner said he had the right to remove this material for a year as long as he paid royalties upon it. That's not exactly correct, and this is where it goes to stipulation of fact. In our joint stipulation of fact, the parties agreed that he had not paid royalties on the materials at the time of the expiration of the Stark lease as required by the Stark lease. What if that was hypothetical? That is the result of an audit that has not yet been completed. And the property owner says, I recognize that we have to complete this audit. But if the audit is completed satisfactorily and the royalties are paid, what does that have to do with you? Because you did not negotiate your lease based upon the hope that you would have that property available to you. That those materials available to you after you knew that Stark is the one that excavated them, cleaned them, sorted them, et cetera. First of all, there is no evidence that they were talking about an audit. You said it was a hypothetical. Yes, because I take it one step further. In the record, the common record, Stark was given notice before the expiration of the Stark lease that if he didn't pay the royalties by the end of the lease, he wouldn't own the stockpiles. And the notice was by whom? Pardon? The notice was from whom? The notice was from Mr. Bach, the attorney representing the property owners, directly to David Stark. But you want to enforce that. No, the question is... Well, you... Yes, because somehow he has to establish he owned them. And if he didn't, he didn't have a right to come in and take them. But you agree that if anybody owned them at that point, it would be the owners, right? Well, I would agree with this, Your Honor. Under no circumstances did Stark own them at the expiration of the lease. Let's assume that for a minute. And there is a colorable argument that the property owner would have owned them. And I think, and I understand we have, we believe we had an ownership interest, but I understand where the court is coming from. At a minimum, I agree the property owners would have a colorable title to ownership, not Stark. Which comes back to, if we have exclusive possession of the property, except for Stark's right to remove material he owned, and he didn't own them, then you can't come on and take the stockpiles. But you can't make that determination because you're not part of the agreement between Stark and the property owner. You're suddenly injecting yourself in the agreement between Stark and the property owner and saying, we're going to decide whether you own them or not. No, Your Honor. The owner says, no, in fact, not only do I decide I'm owning them, I've just worked out another side agreement with Stark, whereby I've said they can still come back and do this. Under the court's theory, then, the property owner could have sold those stockpiles to anybody. It wouldn't have to have been Stark. It wasn't your issue. And it's my issue when they cross that gate and come in to take them. Wait a minute. Here's what you're entitled to. And here's all that you're entitled to. All of the sand and gravel in and underlying the leased premises. What's the purpose of the lease? It's not for you to own the property. It's for you to own the mineral rights or the rights to the sand and gravel underneath it. Because you know what? Once that lease is over, guess what? You don't have any right to anything. But until that lease is over, I do have a right to exclusive possession of the property. Only for purposes of retrieving, excavating, cleaning, sorting, and selling, with the payment of royalty, all the sand and gravel in and underlying the leased premises. It wasn't for you to put cattle in there. You're there for one purpose. You're there to get out all the sand and gravel in and underlying the leased premises. That's it. And we had exclusive possession of the property. For that purpose only. How did Mr. Stark remove his property, his equipment, from the premises? We had no objection to him removing his equipment. Wait a minute. You had exclusive possession. No. You put it on the fence. No. We did not put the fence up. The property owner put the fence up. That's a very specific finding by the court. If you let, as far as you were concerned, you ignored or let, it's okay for him to come on the property and take his equipment? If he owned the equipment, and we believed he did. Well, what made you think he didn't own the sand and gravel? Because he didn't pay the royalty. How did you know that? Because we knew we had exclusive possession, and if you're going to come in and take something, you've got to show your ownership, Your Honor. Let me ask this question. You keep on talking about the lease and how the lease, they didn't own it because they didn't pay it. I've read, we've talked about the lease that Stark had with the landowner. There's no specific statement in there that it must all be paid by the end of the lease, is there? I believe there is. When the lease says, you have one year to remove any material for which royalties have previously been paid. Okay, what does that mean? That means you can't pay them later and then come back and take them. Later, how about you pay them during the first six months of that year's spot, and then you want to take the property in. You're saying that this language, it's an absolute requirement, enforceable somehow by you, that by the end of the lease, all the payments for the royalties, which property hasn't yet even been sold, has to be paid to the landowner. Isn't that your position? I'm saying. Counsel, listen to my question. Yes. I want a yes or no answer. Is it your position that the lease required, there's a provision in the lease, the required start to have paid the landowner by the time the lease is up, any royalties for the property, the sand and gravel, that they haven't yet used or sold? The specific. I'm sorry. Our lease or their lease? Their lease. Their lease. Their lease with the landowner requires them to have paid it by the time their lease is up. Not only is that my position, that's what the party stipulated too. Where in the contract does that say? Well, again, when the contract says they have a year to remove any material on which royalties had previously been paid. Okay. Let's back off. Let's assume in the royalties, I'm assuming they use this stuff, they pay royalties on it. Let's assume they have a year in which to use it. So they use it by June 1st. They use half of it by June 1st. And then they pay the landowner the royalties on that half of it, 50% of it. Would that be permitted within the lease? No. Why not? No. Because. Haven't they now paid royalties on the property they've used? Then their lease should have read they have one year to pay the royalties and remove the materials. That's not what it says. That's not what the party stipulated too. And that's not what their argument was at trial. And now we're in a situation where they took the position. If that is their position, why are you backdating a settlement agreement? If that settlement agreement doesn't make any difference, why do we care? The settlement agreement does make a difference because that's how they're claiming title. No, they're claiming that on the original lease, which would work except for the claim that you make, though I don't see the claim in there, that the royalties must have been paid by the end of the year, by the end of the lease. Your Honor. And I don't see the language. Your Honor, it's in the Joint Stipulation of Facts. We stipulated to that. You stipulated with whom? We stipulated with Mr. Lentz and Stark. The Joint Stipulation of Facts specifically states that they did not pay the royalties prior to the expiration of the lease as required under the Stark lease. That's not a hypothetical. That's not a guess. So the property then goes to the property owner? Assuming that's correct, Your Honor, we still have exclusive possession of the property, Your Honor. Because you made that statement just before Justice Steigman asked you the question. I was just about to ask you. It appears to be your position, then, that even had they paid the royalties in a timely fashion, your decision of a timely fashion, you were going to force them to prove all that to you before they could go in and remove those stockpiles. Because you said you have exclusive possession now once your lease takes place. So even if they had already paid all that and they had complied with all the terms, you're taking the position that they had to prove that to you before they had access to those stockpiles to remove them. They would have had to show us some indication they actually owned the stockpiles. Yes. Sure, you. Yes. And you're just a subsequent lessee. Not just. Because what is also in the common record, Your Honor, is that my client was contacted by the property owners in January and offered to sell us the stockpiles. Okay. And we turned it down because we felt we already owned them. And so that is a significant. And another thing on this settlement agreement, Your Honor, it didn't just... ownership of the stockpiles that will preexist. I'm not saying that in and of itself. What I am saying, however, and these are the findings by Judge Lawrence, is that the settlement agreement, which, by the way, includes more than just royalties, it also required Stark to sell real estate to the property owners. So this is not... It has nothing to do with you at all. I understand. Except if the argument is all we did in the settlement agreement is reach an agreement on what the royalties were due. That's irrelevant. And therefore, we're being wrong. That's totally irrelevant. But it's not. Those two parties decided to settle. Your Honor, when they file a verified complaint and attach a document to the verified complaint and say this document gives us these rights, then they are asking the court to interpret those contracts. Otherwise, I'm just a potted plant. I sat there and listened to say, well, it's their contract. I can't say anything. And they attached it to a verified complaint. And therefore, I have nothing to say about this. You're talking about the backdated instrument? I'm talking about the settlement agreement? Yes. I'm talking about specifically the settlement agreement. Because their argument to the trial court was their rights arose under the settlement agreement. They did not argue that their rights arose under the prior Stark lease. And that's an important distinction, Your Honor. And then they turned around. It all starts from the Stark lease. Because without the Stark lease, they wouldn't have the stockpiles from which they claimed you had taken them. So it all starts from the Stark lease. But it would have been irrelevant because under their argument, under the property owner's argument, and under, frankly, Stark's argument, is that it wouldn't have to have been Stark. So you were in charge of all this land after the Stark lease expired? Yes. Could you have put cattle on it? Yes. Are there any limitations in what you could have done with the land? Open up a dairy freeze or a dairy queen or something? Well, our agreement in the lease is that we would use it for sand and gravel. And that was our purpose. Well, what about cattle then? Well, there was what? Off the top of my head, Your Honor, 180 acres. You certainly can't mine 180 acres in a year. So you would either have to mow it or do something else with it. Going back to Justice Ammon's point about the in or under, how did that work? What was the language that you were entitled to? What the trial court found was that our lease provided that we were entitled to the sand and gravel in and under the ground, but nothing on top. We took issue with that under a motion for summary judgment and said we had rights to any other material that was on the property, period. I'm still not clear. You know, the prepositions matter. In or under is different from on top of. I agree with that. So what was your claim? Because what happened at the trial court was they stopped in mid-sentence and didn't read the rest of the same paragraph that said Scharf also had the right and the right to enter and remove sand and gravel at the lessee's discretion. It's in there, Your Honor. And what the trial court did, Judge Drzezinski, which was the judge prior to Judge Lawrence, Judge Drzezinski stopped in mid-sentence, and this goes through our cross appeal, and that on our motion for summary judgment he struck the entire affidavit of Mr. Tremper, sui sponte, with no findings in the record, none whatsoever, as to what specific parts of that affidavit should have been stricken. And now I'm stuck with going to a motion on summary judgment when he struck the affidavit and then says, well, I struck your affidavit sui sponte, and therefore you have the motion for summary judgment as unopposed motions granted. And that's how that went down. And what I'm saying is Mark Tremper's affidavit created a viable issue of material fact on who owned the property, what our rights were in the material, and how it was going to be interpreted. Counsel, your time is up. It is, Your Honor. Thank you. Thank you. Mr. Hardy, any rebuttal, sir? Very briefly, Your Honors. I have no rebuttal, unless the Court has questions, except as to the last point. Well, I have a question. What about the stipulation in the terms of the lease and that it all had to be paid before the lease ended, according to Mr. Mushak? Is he right? He's not right, because we had every right to renegotiate that. The stipulation did contain language that said these – that it wasn't paid before the end of the year. But there's no question it wasn't paid before the end of the year. It couldn't have been paid before the end of the year. But the stipulation, was that a matter of fact, or was that – the question I asked is what did the leasehold provision require? And he claimed that you stipulated that the lease required that you pay your royalties before the expiration of the lease. Did you stipulate to that? The stipulation contains language, the very language that he quoted. But you have to understand – I don't know what that means. I'm a simple guy. Yes, yes or no questions. Yes. Did the stipulation say – We stipulated to that language. And the fact of the matter is – No, no, no. Mr. Hardy, please. Sure. Let me try this again. Let me get the stipulation. While you're looking for it, here's my question. You heard Mr. Moujon argue that the stipulation said under the lease you were required to have paid royalties by the time the lease term expired, not in the subsequent year. That's what he said you stipulated to. I'm asking you yes or no. Is that right? We stipulated to that paragraph that is contained. Mr. Hardy, I don't have a paragraph. Can you give me a yes or no answer to my question? We stipulated to that language. That's true. What language? I asked you a question. Well, I will read the language. Did you agree that you had to pay the royalties before the expiration of the lease? We agreed that we had not paid any royalties before the expiration of the lease as required by the contract. Okay? We did agree with that. But that's because the property owners took the position in this case that they own this property. That they own this property. It's not the position we took during the negotiation. By this property, you mean the piles. The piles. The stockpiles. And we had every right to negotiate new terms, which is exactly what we did. And, you know, the notion, I mean, getting back to this language that he used, owned by. That's not in their lease. That's not in their lease at all. It says except for Stark and property belonging to Stark. We had one year to remove that material. It didn't matter when we paid those royalties. When it was required under the lease, we could renegotiate those terms with the property owners. And that's exactly what we did because the property owners took the position that, hey, you needed to pay this before the end of the year. Now, we disagreed with that throughout the proceedings. But then when you look at the settlement agreement, the settlement was they're selling these stockpiles to us, and they're selling them to us for the royalties that we owed under the agreement. And that's exactly what we did. The stipulation, Mr. Ruscio, may reference to, was that with the landowners? No. This is a stipulation between the parties stipulating the facts. So by the time you got to litigation, there really wasn't any dispute about whether you paid the royalties by the end of the term of the contract? No dispute at all. And that's the point. You know, this language, belonging to Stark, it doesn't say anything about owned in their lease. It says nothing about that. It did belong to Stark by virtue of the settlement agreement. And that was entered into within one year. Prior to that, it would have been owned by the lessor because Section 8 of your lease says any equipment or material not removed during the said one-year period or in the event of failure to pay the plant site rental during the term of the lease shall belong to the lessor. Right. That's the position they took, and that's the position we ultimately adopted when we signed the settlement agreement. But I can tell you, and we make this point in our brief, that if this had gone south, we wouldn't have agreed to any of that. We would have contested that because we couldn't possibly pay these royalties because they weren't even measured until January the 20th. And, you know, again, this has nothing to do with Stark's rights under their own contract. That goes back to the question I was asking Mr. Mushan about. This is not my business, so I'm trying to figure out how this works. But it seems to me that a contract providing you to pay for royalties and prop on sand and gravel above ground hasn't yet been used. How would you pay royalties on that? How could that work? Well, I think when you look at the correspondence going back and forth, there was an ambiguity in the contract about that. I mean, the contract provided that royalties would be paid the month after they were removed, which, you know, once the contract is terminated, there's an ambiguity right there. And that was, in fact, one of the proposals that we made. We'll pay for these royalties afterwards. So I... Removed from the ground? No. Or removed from the site? Removed from the stockpiles. The stockpiles were taken away. So this, I suppose I should have asked this earlier. The term royalties means royalties on what? You start paying to the landowner royalties on what and when? Royalties on the excavated materials that they removed, processed, and there were different royalties for different materials depending on what type of rock. They used in a road building or whatever? Used in road building, sand, concrete. The contract lays out what the different royalties are for specific types of excavation materials after they're processed. I should have asked this earlier. Yes, per ton. So for the six or seven years of this contract, how many was it, six? Yes. During that period of time, Stark would be excavating and taking excavated materials, using it in a fashion, and then paying royalties after they've been used? The contract said that after they removed it from the property and used it, then they looked at the load tickets and everything else, and then they would pay the royalties, and they had to pay a certain minimum amount each year under the contract, but that was part of the problem. They had basically assented to us removing a lot of those materials and storing them on the 11-acre track, and if they had enforced the contract during the period of the contract, the property owners could have said, well, you should have paid royalties when you removed those. All that had to be measured. So we would have made the argument that, look, they assented to that. They agreed to it. But the business practice for the previous six years was you paid royalties after you used the property? We paid royalties after we removed them from the property and used them for construction products or projects or whatever, but we excavated more than we needed, so that was stored on the property, and, of course, the agreements provided for that. There's stockpiles. That was the question I was trying to get to with Mr. Rochon. If that was the normal practice, how could you be expected to pay royalties on property and excavated materials still sitting there? Well, they make the argument that we should have paid something into an escrow or something beforehand, but when you look at the correspondence beforehand, I disagree totally with his reference to this one contract or this one letter. You look at the correspondence going back and forth between Stark and the property owners. They're dealing with these issues, and, you know, I mean, they were trying to interfere with it, and to your point, they had absolutely no basis for that. They didn't know whether the royalties were paid. They objected to it, and quite frankly, I can't understand why they did. What business of it is there, particularly after the settlement agreement, which made it very clear that these belonged to Stark. You paid the royalties. That fits in with at least their own reading of it. Okay, you both have given so much time. This is a complicated case. Thank you for your arguments. Thank you very much.